**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CYTRX CORPORATION, STEVEN A. KRIEGSMAN, LOUIS IGNARRO, EARL W. BRIEN, and JOEL K. CALDWELL,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>) No. 20-cv-2757<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff Shiva Stein ("Plaintiff") brings this Complaint for Violation of Federal Securities Laws ("Complaint") against CytRx Corporation ("CytRx" or the "Company") and the members of its board of directors (the "Board"): Steven A. Kriegsman, Louis Ignarro, Earl W. Brien, and Joel K. Caldwell (collectively, the "Individual Defendants" and, together with CytRx, "Defendants"). Plaintiff's allegations are based upon the knowledge of Plaintiff as to herself and upon information and belief, including the investigation conducted by her undersigned attorneys and a review of public information, news reports, and documents filed with the U.S. Securities and Exchange Commission ("SEC").

**INTRODUCTION**

1.　Plaintiff brings this action against Defendants to remedy the misstatement of material information in the proxy statement disseminated by CytRx in advance of the 2020 Annual Meeting of Stockholders of CytRx Corporation (the "Annual Meeting") scheduled to be held on July 30, 2020.

2.　On June 12, 2020, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in which the Company and Board are soliciting stockholder approval of, *inter alia*, an amendment to the Company's Restated Certificate of Incorporation which would

increase the number of authorized shares of common stock from 41,666,666 to 51,666,666 (the "Certificate Proposal"). In the Proxy, Defendants acknowledge that approval of the Certificate Proposal "will require the affirmative vote of the holders of a majority of the outstanding shares of common stock".

3. However, Defendants misstate the effect of abstentions and broker non-votes under this voting standard, claiming that "abstentions and broker non-votes have no effect on the outcome of this proposal." Because adoption of the Certificate Proposal requires the majority of outstanding shares, any vote not cast in the affirmative is, effectively, a vote against the Certificate Proposal.

4. Federal regulations require disclosure of both the voting standard that must be satisfied for a proposal to carry *and* the treatment and effect of abstentions and broker non-votes so that stockholders know how their vote, abstention, or inaction will affect the proposal being put to a stockholder vote.

5. This information is critical here, where the outcome of the vote may turn on whether stockholders take affirmative action. The Company has disclosed that the Certificate Proposal is a non-routine matter, meaning that, in the absence of instructions from beneficial stockholders, brokers will not have discretionary authority to vote uninstructed shares and will instead record "broker non-votes". At the annual meeting held on August 9, 2018, brokers recorded 16,313,728 broker non-votes with respect to each non-routine matter. Given that there were 33,637,501 CytRx shares issued and outstanding as of the record date for this year's Annual Meeting, the treatment and effect of broker non-votes on the Certificate Proposal may determine the outcome of the vote.

6. CytRx stockholders need to know that uninstructed shares will have the practical

effect of votes against the Certificate Proposal so that they do not forfeit their right to cast an informed vote based on the mistaken belief that inaction will not affect its outcome, as the Proxy presently (and falsely) says.

7. Plaintiff therefore seeks to enjoin the vote on the Certificate Proposal scheduled to be held at the Annual Meeting until after Defendants disclose the actual treatment of uninstructed shares and effect of broker non-votes on the Certificate Proposal.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78aa].

9. In connection with the acts, omissions, conduct, and wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

10. Venue is proper because many of the acts and conduct complained of herein, including dissemination of the Proxy, occurred in this District and is the District in which the Plaintiff resides.

11. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

## PARTIES

### I. PLAINTIFF

12. Plaintiff is, and has continuously been, a CytRx stockholder at all relevant times and is entitled to vote at the Annual Meeting.

**II.    DEFENDANTS**

13.    Defendant CytRx is a Delaware corporation which maintains its principal executive offices at 11726 San Vicente Blvd, Suite 650, Los Angeles, California 90049.

14.    Defendant Steven A. Kriegsman has been CytRx's Chief Executive Officer and a director since July 2002. In October 2014, he was elected Chairman of the Board.

15.    Defendant Louis Ignarro has been a CytRx director since July 2002.

16.    Defendant Earl W. Brien has been a CytRx director since December 2, 2016.

17.    Defendant Joel K. Caldwell has been a CytRx director since July 12, 2017.

**FURTHER SUBSTANTIVE ALLEGATIONS**

18.    On June 12, 2020, the Company filed the Proxy with the SEC in advance of the Annual Meeting scheduled for July 30, 2020.

19.    Through the Proxy, Defendants are soliciting stockholder approval of the Certificate Proposal, which would increase the number of authorized shares of CytRx common stock from 41,666,666 to 51,666,666.

20.    Per the Proxy, approval of the Certificate Proposal "will require the affirmative vote of the holders of a majority of the outstanding shares of common stock." (Proxy at 4). This is the voting standard specified by the Delaware General Corporation Law for amendment of a certificate of incorporation. *See* 8 *Del. C.* § 242(b)(1) (requiring that the affirmative vote of "a majority of the outstanding stock entitled to vote thereon" approve most types of charter amendments).

21.    Because there were 33,637,501 shares of CytRx common stock outstanding as of June 5, 2020, the record date for the Annual Meeting, 16,818,751 shares must be voted in favor of the Certificate Proposal for it to carry.

22.    Notwithstanding that this voting standard looks only to whether more than half of

a corporation's shares are voted in favor of a charter amendment, Defendants advised CytRx stockholders that "abstentions and broker non-votes have no effect on the outcome of this proposal." (Proxy at 4).

23. This incorrect disclosure constitutes a false statement of material fact.

24. Generally, with respect to proposals like the Certificate Proposal, stockholders may cast a vote "for" or "against" the proposal, abstain from voting, or not submit voting instructions. Most CytRx stockholders beneficially hold their Company shares in "street name", with a broker acting as the actual record holder of the shares. If brokers do not receive voting instructions from a beneficial stockholder, they may have discretion to vote the stockholder's shares depending on whether the proposal is "routine" or "non-routine". With respect to "routine" proposals, brokers have authority to vote uninstructed shares within and pursuant to their discretion and will typically vote pursuant to the recommendations set forth in a proxy statement. Brokers have no discretionary authority to vote shares with respect to "non-routine" proposals and a "broker non-vote" is recorded for each such uninstructed share.

25. The effect of a broker non-vote depends on both the matter being voted upon and company-specific voting standards. If a proposal requires only approval by a majority of the votes cast, then broker non-votes will have no effect. However, if a proposal requires the approval of the majority of all outstanding stock, then broker non-votes have the same effect as votes against the proposal.

26. In the Proxy, Defendants disclose that the Certificate Proposal is a non-routine matter. Therefore, if beneficial stockholders do not provide voting instructions to their brokers, such brokers will record a broker non-vote for each uninstructed share. Because the Certificate Proposal requires the affirmative vote of the majority of outstanding CytRx stock, uninstructed

shares will consequently have the same effect as votes against the Certificate Proposal. The same goes for abstentions.

27. Accordingly, Defendants' claim that "abstentions and broker non-votes have no effect on the outcome of this proposal" is at odds with Delaware statutory law and affirmatively false.

28. This misstatement on its face violates Schedule 14A, promulgated by the SEC, and for that reason alone constitutes a material misrepresentation. Specifically, the SEC requires that issuers disclose the voting standard and method of vote tabulation as to each matter put to a stockholder vote:

> *Voting procedures*. **As to each matter which is to be submitted to a vote of security holders**, furnish the following information:
>
> (a) State the vote required for approval or election, other than for the approval of auditors.
>
> (b) **Disclose** the method by which votes will be counted, including **the treatment and effect of abstentions and broker non-votes** under applicable state law as well as registrant charter and by-law provisions.

17 CFR § 240.14a-101, Item 21.

29. This false statement of material fact is exacerbated by the fact that Defendants' disclosure may well be outcome determinative. At the Company's last annual meeting, 16,313,728 broker non-votes were recorded with respect to each non-routine proposal put to a stockholder vote. These broker non-votes constituted roughly 48.5% of the 33,637,501 CytRx shares outstanding as of the record date for that meeting.

30. If the same number of broker non-votes are recorded at the Annual Meeting, then the Certificate Proposal will require the support of the 97.1% of the remaining 17,323,773 outstanding CytRx shares to garner the 16,818,887 "for" votes needed to carry.

31. If stockholders credit the erroneous disclosure in the Proxy, however, they will believe that broker non-votes and abstentions will have no effect on the outcome of the Certificate Proposal. Again assuming the same number of broker non-votes from the Company's last annual meeting and discounting the possibility of abstentions, only 8,661,887 "for" votes would be needed for the Certificate Proposal to carry. This figure represents a difference of 24.2% fewer outstanding shares than the number actually required for approval under the applicable voting standard.

32. CytRx stockholders need to be properly advised of the correct treatment and effect of abstentions and broker non-votes on the Certificate Proposal before they can make an informed decision as to whether and/or how to vote their shares.

## **CLAIMS FOR RELIEF**

### COUNT I
### Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder
### (against All Defendants)

33. Plaintiff realleges each allegation pleaded above.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, were false and misleading and failed to include all material information. CytRx is liable as the issuer of these statements.

35. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants, who were aware of the information set forth therein. By virtue of their positions within the Company, the Individual Defendants had a duty to disclose accurate information in the Proxy.

36. The Individual Defendants were at least negligent in filing the Proxy without disclosing the correct treatment and effect of abstentions and broker non-votes on the outcome of

the Certificate Proposal.

37. This information is material to a reasonable stockholder, who would consider it important in deciding whether and/or how to vote on the Certificate Proposal. In addition, a reasonable investor will view a full and accurate disclosure of the treatment and effect of abstentions and broker non-votes as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Certificate Proposal.

39. By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements and omissions in the Proxy, Plaintiff and the stockholders are threatened with irreparable harm.

**COUNT II**
BREACH OF FIDUCIARY DUTY
*(against the Individual Defendants)*

41. Plaintiff realleges each allegation pleaded above.

42. The Individual Defendants owe fiduciary duties to CytRx stockholders, including the duties of care, disclosure, good faith, and loyalty.

43. By virtue of their positions as directors of CytRx and/or their exercise of control and ownership over the business and corporate affairs of the Company, the Individual Defendants have, and at all relevant times during their respective tenures on the Board had, the power to control and influence and did control and influence and cause the Company to engage in the practices complained of herein. Each Individual Defendant was required to cause the Company to comply with Delaware law when issuing disclosures.

44. The Individual Defendants breached their fiduciary duties by issuing the Proxy, which falsely states that abstentions and broker non-votes will have no effect on the outcome of the Certificate Proposal when, in fact, they will have the effect of votes against the Certificate Proposal.

45. As a result of these actions of the Individual Defendants, Plaintiff and the stockholders have been and will be injured.

## COUNT III
### DECLARATORY RELIEF
*(against All Defendants)*

46. Plaintiff incorporates by reference and realleges each allegation set forth above.

47. The facts and circumstances pleaded herein have given rise to an actual controversy which currently exists between Plaintiff, on one hand, and Defendants, on the other hand, concerning their respective rights and duties under federal and Delaware law.

48. By improperly misstating the treatment and effect of abstentions and broker non-votes on the outcome of the Certificate Proposal, Defendants have denied Plaintiff and other CytRx stockholders full and accurate disclosure of information material concerning their vote on the Certificate Proposal.

49. Plaintiff desires a judicial determination and declaration that the Proxy is false and misleading.

50. A judicial declaration is necessary and appropriate at this time under the circumstances so that Plaintiff and the stockholders will receive full and accurate disclosures concerning the Certificate Proposal prior to the stockholder vote thereon set to take place at the Annual Meeting.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of an order:

A. A declaration that the Proxy is materially false and misleading;

B. Enjoining the stockholder vote on the Certificate Proposal until such time as Defendants have corrected the false and misleading statements in the Proxy and otherwise made full disclosure of all information material to the stockholders' vote on the Certificate Proposal;

C. Finding the Individual Defendants liable for breaching their fiduciary duties;

D. Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

E. Awarding such other and further relief as is just and equitable.

Dated: June 22, 2020                                             Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s/ *Gloria Kui Melwani*
Gloria Kui Melwani
Benjamin Y. Kaufman
270 Madison Avenue
New York, NY 10016
(T) 212 545-4600
(F) 212-686-0114
melwani@whafh.com
kaufman@whafh.com

*Attorneys for Plaintiff*

OF COUNSEL:

**FIELDS KUPKA & SHUKUROV LLP**
William J. Fields (wfields@fksfirm.com)
Christopher J. Kupka (ckupka@fksfirm.com)
Samir Shukurov (sshukurov@fksfirm.com)
1370 Broadway, 5th Floor – #5100
New York, New York 10018
(T) 212.231.1500
(F) 646.851.0076